# MEMORANDUM ENDORSED

## CARLA SANDERSON

ATTORNEY NY, NJ, SDNY, EDNY

260 MADISON AVENUE
NEW YORK, NEW YORK 10016
carla@carlasandersonlaw.com

T 646.499.3818
F 646.499.3814
carlasandersonlaw.com

December 13, 2023

**Via ECF**
The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/14/2023

Re:   *United States v. Ray Eduardo*
      1:22-cr-00522

Dear Judge Woods,

      I represent Ray Eduardo in the above captioned case. Mr. Eduardo was detained on November 27, 2023 after he was remanded by Magistrate Judge Cave who denied his request for bond.[1] I write to propose a stronger bond package than was presented to Magistrate Cave that will reasonable ensure Mr. Eduardo's return to court and safety of the community. Mr. Eduardo is a young man with no prior criminal record outside of the dates charged in the indictment, he is not alleged to have been involved in any violence, and while he is charged with firearms possession in relation to the conspiracy, there is no evidence of Mr. Eduardo having firearms. Certain of Mr. Eduardo's codefendants with similar or greater culpability have been released on bond and Mr. Eduardo should be as well. Mr. Eduardo is proposing a meaningful bail package, consisting of three suretors, two of whom are gainfully employed full-time; home incarceration at his cousin's family home in Yonkers, New York; GPS monitoring and any other conditions the Court requires.

### I.   Law Governing Pretrial Release

      As the Supreme Court held in *Salerno*, "[i]n our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). This presumption of release is encapsulated in the Bail Reform Act ("BRA"), 18 U.S.C. § 3142. The statute states that the Court "shall order" pretrial release, § 3142(b), except in certain narrow circumstances. Even if the Court determines under § 3142(c) that an unsecured bond is not sufficient, the Court "shall order" release subject to "the least restrictive further condition[s]" that will "*reasonably assure*" the defendant's appearance in court and the safety of the community. § 3142(c)(1) (emphasis added). Under this statutory scheme, "it is only a 'limited group of offenders' who should be detained pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. No. 98-225, at 7 (1984), *as reprinted in* 1984

---

[1] Undersigned counsel has ordered the transcript but has not yet received it.

U.S.C.C.A.N. 3182, 3189); *see also United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) ("There can be no doubt that this Act clearly favors nondetention."). In this case, the statute creates a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." § 3142(e)(3). After a government study revealed that the presumption was leading to overincarceration of low-risk individuals and failed to accurately identify those who posed a risk of danger or failure to appear, the Judicial Conference of the United States asked Congress to dramatically limit the presumption in drug cases to defendants with very serious criminal records.[2]

The law is clear that very little is required for a defendant to rebut the presumption. A defendant need only produce "some evidence that he will not flee or endanger the community if released." *United States v. Dominguez,* 783 F2d 702, 707 (7th Cir. 1986); *see also United States v. Mattis,* 963 F3d 285, 300 (2d Cir. 2020) citing *United States v. Mercedes*, 254 F3d 433, 435 (2d Cir. 2001). This "burden of production is not a heavy one to meet." *Dominguez*, 783 F.2d at 707. After the presumption is rebutted, the Court must weigh the presumption against all of the other evidence about the defendant's history and characteristics that tilts the scale in favor of release. *See Mercedes*, 254 F3d at 436. The Court should not give the presumption undue weight if evidence relating to other § 3142(g) factors support release. Even when a defendant is charged with a serious crime or has a significant criminal history, there may be release conditions that will reasonably assure the safety of the community.

## II. Mr. Eduardo Has Rebutted The Presumption of Detention

Mr. Eduardo is a 24-year-old man who was born and raised in New York City. He is a loving son, boyfriend, brother and friend. Mr. Eduardo is charged with narcotics conspiracy in violation of 21 USC § 846 occurring from 2019 to January 2023 and with possession of firearms

---

[2] The Judicial Conference is a powerful body presided over by Chief Justice Roberts that includes the chief judge of every federal circuit. See REPORT OF THE PROCEEDINGS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES (Sept. 12, 2017), https://www.uscourts.gov/sites/default/files/17-sep_final_0.pdf. The Conference's proposed revision reads as follows (new language underlined): "(3) Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed — (A) an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46 <u>and such person has previously been convicted of two or more offenses described in subsection (f)(1) of this section, or two or more state or local offenses that would have been offenses described in subsection (f)(1) of this section if a circumstance giving rise to federal jurisdiction had existed, or a combination of such offenses</u>." *Id.* at 10–11. The Judicial Conference reiterated this same recommendation in 2020. *See* Letter from the Judicial Conference of the United States to the House and Senate Appropriations Committees (April 28, 2020), https://www.uscourts.gov/sites/default/files/judiciary_covid-19_supplemental_request_to_house_and_senate_judiciary_and_approps_committees.4.28.2020_0.pdf

in furtherance of that conspiracy. In January 2023, law enforcement searched Mr. Eduardo's mother's home and purportedly attempted to arrest Mr. Eduardo. However, Mr. Eduardo was not present at that time.[3] Upon information and belief, law enforcement made no further attempts to arrest him and did not return to the location. With regard to his role in the conspiracy, Mr. Eduardo is alleged to have been a worker who dealt drugs in hand-to-hand transactions and who received instructions from others. There is no allegation he was involved in any violence.

### A. Mr. Eduardo's Related New York State Drug Cases

While Mr. Eduardo has no prior criminal record and has never served time in prison, he has two open New York States drug cases which he was arrested for on February 18 and May 24, 2022, when he was 23 years old. Upon information and belief, the conduct underlying these charges constitutes evidence that the government would use to prove the instant conspiracy or is relevant conduct to the instant offense. Pursuant to a plea deal, Mr. Eduardo plead guilty to a misdemeanor in September 2022 with the promise of a non-criminal resolution, whereby if he completed a drug program and other conditions, the misdemeanor plea would be withdrawn, and Mr. Eduardo would plead guilty to a violation (not a crime). After appearing at five court appearances and attending his drug program, Mr. Eduardo failed to appear at his March 13, 2023 appearance when the misdemeanor charge was to be dismissed. A bench warrant was issued, and the case remains pending.

Despite the state bench warrant, Mr. Eduardo will not flee in this case because of the strong bail package he has proposed. Mr. Eduardo is a United States citizen whose close family and friends are all located in New York City. He has a strong support system consisting of his girlfriend, mother, sister and extended family, at least three of whom are willing to sign a bond on his behalf. His family has provided letters showing their commitment and support for Mr. Eduardo. *See* letters attached at Exhibit A. The fact that Mr. Eduardo's loved ones – who are of modest means themselves - are willing to risk their own financial security for Mr. Eduardo speaks to their belief that he will not flee. Monetary bond was never set in the state case and his loved ones did not sign a bond on his behalf. Considering his close relationship with his mother, girlfriend and sister, and Mr. Eduardo's understanding of the serious consequences to himself and his loved ones should he flee, Mr. Eduardo would never consider doing so. Additionally, Mr. Eduardo is indigent and does not have the means to flee or live comfortably elsewhere. *C.f. United States v. Maxwell*, 510 F Supp 3d 165, 172 (S.D.N.Y. 2020) ("defendant's extraordinary financial resources could provide her the means to flee the country").

### B. Mr. Eduardo's Arrest on November 24, 2023

On November 24, 2023, a vehicle Mr. Eduardo was riding in was stopped by police. Unbeknownst to Mr. Eduardo, the girlfriend of the driver had called the police and told them the

---

[3] While the government has called Mr. Eduardo a "fugitive" for not turning himself in, Mr. Eduardo was never served with an arrest warrant and due to his indigence, he lacked the means to retain counsel who would have been able to communicate with the government and arrange a voluntary surrender.

driver had threatened her (per Mr. Eduardo's state defense counsel, the assistant district attorney made a *Brady* disclosure that the girlfriend recanted this allegation). Mr. Eduardo had nothing to do with why the vehicle was pulled over and purportedly attempted to leave, and when doing so he purportedly bumped into an officer causing the officer to fall. This resulted in Mr. Eduardo sustaining New York State charges of assault in the second degree and resisting arrest.

Importantly, at Mr. Eduardo's state court arraignment on the charges, New York City Criminal Court Judge Valentina Morales considered Mr. Eduardo's flight risk, as required by New York law, and ruled that monetary bond was not necessary for these new charges.[4] Per discussions with Mr. Eduardo's state defense attorney, the Assistant District Attorney argued for substantial monetary bail and Judge Morales denied this request and released Mr. Eduardo on his own recognizance with conditions to comply with supervised release.[5] While Mr. Eduardo's alleged actions on November 25, 2023 were misguided and wrong, this does not mean that after having been appointed counsel in the instant case and with a bond signed by three family members, that he would fail to appear in this case. Mr. Eduardo now has the benefit of counsel to advise him in this federal matter and he understands the importance of abiding by all of the Court's orders.

Mr. Eduardo would not pose a danger to the community if released to home incarceration. The government relied on the instant offense conduct of being a frequent hand-to-hand dealer to argue Mr. Eduardo is a danger. However, strict conditions of release paired with a substantial bond and supervision would be sufficient to reasonably assure he is not a danger to others, particularly because he has no prior criminal record and there are no allegations of violence.[6] In addition, Mr. Eduardo has an employment history including working as a porter in a building in Manhattan. Should the Court permit Mr. Eduardo to find and obtain employment he will make his best efforts to do so.

### C. There Are Conditions That Will Reasonably Assure Mr. Eduardo's Appearance and Safety of the Community

Regardless of whether this Court finds that the presumption of detention is rebutted, Mr. Eduardo must be released because there are conditions that will reasonably assure the safety of

---

[4] New York law requires the Court to consider "the kind and degree of control or restriction that is necessary to secure [a defendant's] court attendance." *See* CPL 510.30(2)(a).

[5] The transcript of these proceedings has been ordered but has not yet been received.

[6] Judge Cave believed the location of Mr. Eduardo's previously proposed residence was too close to the location of the charged conspiracy. After learning that Mr. Eduardo would be returning to his mother's home, located under five minutes from the location of the charged conspiracy, Judge Cave denied Mr. Eduardo's bail application. Subsequently, Mr. Eduardo and his family arranged for him to reside with his cousin and her family in Yonkers, New York, which is outside of New York City many miles from where the offense took place. This ameliorates Judge Cave's concerns that he would be residing too close to the location of the conspiracy.

the community and Mr. Eduardo's appearance in court. A defendant cannot be detained "unless a finding is made that no release conditions 'will reasonably assure . . . the safety of the community'" and the defendant's appearance in court. (§ 3142(e)). Here, the government cannot meet its high burden of proving by clear and convincing evidence that there are no release conditions that will reasonably assure the safety of the community and that there are no conditions that would reasonably assure Mr. Eduardo's appearance in court. Thus, Mr. Eduardo cannot be detained.

The following conditions of release under § 3142(c)(1)(B), and any other conditions the Court deems necessary, will reasonably assure Mr. Eduardo's appearance in court and the safety of the community.

- Post a bond with at least three signatories, two of which are financially responsible
- Electronic monitoring, GPS monitoring, home detention or home incarceration
- Maintain or actively seek employment
- Follow restrictions on "personal associations, place of abode, or travel"
- Report on a "regular basis" to Pretrial Services
- Refrain from possessing "a firearm, destructive device, or other dangerousweapon"
- Refrain from "excessive use of alcohol"
- Refrain from "any use of a narcotic drug or other controlled substance . . . without a prescription"
- Comply with substance abuse treatment
- Attend the Focus Forward Program
- Attend all state court appearances
- Comply with New York state supervised release

The Court should consider the fact that exceedingly few federal defendants on pretrial release either fail to appear or reoffend. In the 12-month period from September 2021-September 2022, 99% of released federal defendants nationwide appeared for court as required.[7] With his strong family support system and lack of a prior criminal record or violent conduct, there is no indication that Mr. Eduardo would be one of them.

Mr. Eduardo is 24 years old. If he were not charged in a firearms count, he would be an excellent candidate for this District's Young Adult Opportunity Program. He is within the age range, he is "non-violent" and would benefit from the "structure and accountability and offers education and employment support, counseling, and treatment resources" that this program offers. The same considerations weigh in favor of Mr. Eduardo's release: his age and

---

[7] *Judicial Business: Federal Pretrial Services Tables, Admin. Off. U.S. Courts* ("AO Table"), Table H-13 *available at* https://www.uscourts.gov/sites/default/files/data_tables/jb_h13_0930.2022.pdf (showing a failure-to-appear rate of .1% of all pretrial services cases closed for 12 month period ending September 2022)

5

lack of prior record, lack of gang ties or violence, extremely committed family support networking and need for drug treatment. Indeed, it is widely acknowledged that younger defendants deserve different treatment, including lower sentences both because their brains are not fully developed (impacting their decision making and impulse control) and because they are more likely to rehabilitate. *See Miller v. Alabama*, 567 U.S. 460, 472 n.5 (2012) (explaining that the immaturity of adolescents' brains and corresponding diminished cognitive abilities and executive functions lessens their "moral culpability"). This should be considered by the Court in its bond determination as well.

Mr. Eduardo is highly motivated to obtain the services he needs and to comply with this Court's orders. Incarcerating him would hinder Mr. Eduardo's ability to defend his state cases and obtain services widely available through the pretrial services department that are unavailable at pretrial detention facilities such as the Metropolitan Detention Center in Brooklyn, New York, where he is detained. If released, I recommend that Mr. Eduardo enroll in the Focus Forward program, a nonprofit organization that provides a 12-week course designed to provide an intellectual and emotional outlet for students as they navigate the stress and uncertainty of the pretrial phase of their federal cases.

I respectfully request that the Court order a hearing on this application as soon as practicable. I thank the Court for its time and consideration.

Respectfully submitted,

/s

_____

Carla Sanderson

Application granted. The Court will hold a bond hearing on December 15, 2023 at 9:00 a.m. in Courtroom 12C, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007. The Government is directed to produce the defendant for that date and time.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 269.

SO ORDERED.

Dated: December 14, 2023
New York, New York

GREGORY H. WOODS
United States District Judge